UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| ) | |
| v.  ) | Case No.: 3:23-cr-0215-LCB-HNJ |
| ) | |
| STEVEN WAYNE CANADAY, ) | |
| ) | |
| Defendant.  ) | |

## MEMORANDUM OPINION & ORDER

Steven Wayne Canaday moved to suppress evidence obtained during an investigation that ultimately led to his arrest and indictment for offenses related to the production and possession of child pornography.  (Doc. 16).  After initial briefing, the magistrate judge assigned to this case conducted a hearing, allowed supplemental briefing, and entered a report recommending this Court deny Canaday's motion.  (Doc. 29).  Canaday filed timely objections to the report and recommendation, which this Court will now address.  (Doc. 30).

According to testimony at the suppression hearing, law enforcement officers executed a search warrant at Canaday's residence on November 23, 2022, after receiving 12 "Cybertips" from the National Center for Missing and Exploited Children between May 2022 and October 2022.  The tips related to photographs of

what appeared to be a nude child allegedly uploaded to a social media site from an IP address registered to Canaday.

Officers arrived at Canaday's residence in the early morning hours and, once the occupants of the home were outside, Canaday consented to accompany Detective Justin Adams to Adams's vehicle to speak with him about the circumstances of the search. Once inside the vehicle, Canaday was read his *Miranda* rights, indicated that he understood those rights, and ultimately made incriminating statements in response to the officers' questions.[1]

In his motion to suppress, Canaday seeks to suppress evidence found on his cellular telephone and other media devices, which were seized and searched pursuant to the warrant. According to Canaday, the warrant was overly broad as to the type of content to be searched for on the devices rendering the search violative of the Fourth Amendment. The magistrate judge disagreed and found that the warrant comported with the Constitution. Canaday also seeks to suppress statements he made while seated in Officer Adams's vehicle. Canaday does not dispute that he was advised of his *Miranda* rights and that he understood those rights. However, he characterizes the interrogation as custodial and argues that the officers violated his Fifth Amendment rights by continuing to question him after he invoked his right to counsel. While the magistrate judge agreed that the

---

[1] Another officer, Special Agent Senior Maxwell, sat in the back seat of the vehicle.

2

interrogation was custodial, he found that Canaday's statement regarding counsel was ambiguous and did not require officers to stop the interrogation until counsel was present.

The Report and Recommendation thoroughly lays out the factual background needed to understand the issues Canaday raises. Thus, it is unnecessary to give an exhaustive recitation of those facts here. This Court will provide specific factual detail as necessary to understand Canaday's objections.

## Canaday's Objections

Canaday raises two objections to the Report and Recommendation. First, Canaday objects to the magistrate judge's finding that the warrant limited the search to devices or media that might contain evidence of child pornography. According to Canaday, the last sentence in the warrant authorized law enforcement to search his media devices for any and all incriminating evidence; not just evidence related to the production and possession of child pornography. Canaday also objects to the magistrate judge's legal conclusion that the warrant complied with the Fourth Amendment's particularity requirement.

As noted in the Report and Recommendation, the search warrant provided as follows:

> FOR THE FOLLOWING PROPERTY: To document the residence with video and photographs and to collect any and all records relating to violations of 13A-12-192 including: Any and all computers and computer related media, and media storage devices. Any and all

3

> records, documents, and materials pertaining to any visual depiction of a minor engaging in sexually explicit conduct, child pornography, child erotica, a sexual interest in children, or sexual activity involving children. Any and all records, documents, and materials pertaining to any minor who is, or appears to be, the subject of any visual depiction of a minor engaging in sexually explicit conduct, child pornography, child erotica, a sexual interest in children, or sexual activity involving children. Any and all records, documents, and materials evidencing possession, use, or ownership of any of the premises to be searched or property to be seized. Any and all records, documents, and materials that concern any internet accounts or any internet-related activity. Any and all software that may be utilized to create, receive, distribute, store, modify, conceal, or destroy any of the evidence sought.
>
> **In the execution of this warrant, the detectives may seize all computers and computer-related media to be searched later by a qualified examiner in a laboratory or other controlled environment.**

(Doc. 29 at 6) (emphasis in original). Canaday argues that the last sentence renders the entire warrant unconstitutional because, he says, it authorized law enforcement to search for more than the alleged child pornography it believed to be on his devices. According to Canaday, the warrant did not sufficiently particularize the place to be searched or the things to be seized.

In rejecting this argument, the magistrate judge found that Canaday was reading that specific sentence out of context and failing to interpret it in conjunction with the rest of the warrant. Citing *Andresen v. Maryland*, 427 U.S. 463, 480-82 (1978), the magistrate judge correctly held that the language of a warrant must be interpreted in context. The magistrate judge noted that "the actual terms of the contested paragraph limit its scope: the phrase '[i]n the execution of

4

this warrant' refers to and incorporates the warrant's preceding paragraphs. That is, contextually the challenged language affects the execution of the warrant by prescribing the search of computers and related media off-site, yet such searches must relate to the concern for violations of Alabama Code § 13A-12-192."

Canaday attempts to distinguish the language at the end of the warrant in his case from the warrants in the other cases cited in the Report and Recommendation. For example, he notes that the challenged language in *Andresen* was preceded by an introductory phrase and a colon and points to the fact that the challenged language in the warrant in this case is set apart in a new sentence and paragraph. According to Canaday, this distinguishes the two warrants and renders his unconstitutionally broad. However, this Court does not read *Andresen* as mandating any particular punctuation or syntax. Rather, the magistrate judge correctly read *Andresen* to instruct courts to read the language of a warrant in the context of the entire warrant. Here, the remainder of the warrant specifically provides that officers are to search Canaday's home and its contents for evidence of the production and possession of child pornography. The challenged paragraph refers to "this warrant" and thus limits the search to fruits of the crime described therein.

But even if the last sentence did not contain the phrase, "this warrant," a practical and commonsense reading of it in relation to the rest of the warrant makes

5

it clear that the officers are to search Canaday's home and seize devices that may contain evidence of child pornography.  The challenged sentence could also be read as simply authorizing any of the seized devices to be searched by a qualified examiner in an off-site laboratory or other controlled environment.  In other words, the last sentence could be interpreted as relieving police of the burden of bringing a technical expert to the scene to physically search through the contents of Canaday's devices while still present in his home.  Because this Court does not read the challenged language as authorizing a general search of Canaday's devices, his attempts to draw distinctions with language from the warrants in the other cases cited in the Report and Recommendation are not persuasive.  Accordingly, this Court finds that Canaday's objection regarding the language of the search warrant is due to be overruled.

Canaday next objects to the magistrate judge's legal conclusion that Canaday did not unambiguously request counsel.  It is important to note that Canaday does not contend he was not advised of and aware of his *Miranda* rights.  Rather, he argues that he requested counsel while being interrogated by Detective Adams but was nevertheless subjected to continued questioning.  A review of the record reveals that, after Detective Adams explained the purpose of the questioning, the search, and some of the evidence that had been gathered, Adams asked Canaday, "What are your thoughts?  Tell me what you're thinking right

now." (Doc. 26 at 27, 68). Canaday replied, "I'm thinking it looks like I need to get a lawyer, for sure. If you've got all this stuff against me." (Doc. 16 at 6). According to Canaday, his use of the phrase, "I'm thinking," did not indicate that he was pondering whether to get a lawyer. Rather, he says, it was in response to Detective Adams's question about what he was thinking. But even if that language were excised from his statement, the remaining answer was "it looks like I need to get a lawyer." *Id*. As the magistrate judge correctly found, that language is ambiguous under the relevant caselaw.

The Report and Recommendation cites the United States Supreme Court's decision in *Davis v. United States*, 512 U.S. 452, 459 (1994), in which that Court held that if a suspect's reference to a lawyer falls "ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel," the interrogator may ignore the reference and proceed with questioning. In *Davis*, the Supreme Court held that the statement, "Maybe I should talk to a lawyer," did not require officers to stop an interrogation. *Id*. at 462. The magistrate judge also cites numerous cases from the Eleventh Circuit and other Circuits in which language similar to that used by Canaday was held to be ambiguous. *See e.g. Craig v. Singletary*, 127 F.3d 1030 (11th Cir. 1997) (expressing doubt that suspect's statement, "if you have that against me you might as well get me a lawyer," constituted an unequivocal

7

assertion of the right to counsel, but avoiding the issue because admission of the statement into evidence manifested harmless error); *Mincey v. Head*, 206 F.3d 1106 (11th Cir. 2000) (finding suspect's statement "go ahead and run the lawyers" did not amount to an unambiguous or unequivocal request for counsel); *Diaz v. Senkowski*, 76 F.3d 61, 63 (2d Cir. 1996) (determining suspect's statement "do you think I need a lawyer" ambiguous within the meaning of *Davis*); *Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000) (finding suspect's statement "I think I need to get a lawyer" closely resembled suspect's statement in *Davis* and, thus, did not constitute an unequivocal request for counsel). Accordingly, this Court finds no error in the magistrate judge's conclusion that Canaday's statement was not an unequivocal, unambiguous request for counsel. Therefore, his objection on this ground is due to be overruled.

## Conclusion

Having reviewed *de novo* the entirety of the record, the Court hereby **ADOPTS** the magistrate judge's report and **ACCEPTS** his recommendation. The Court has also considered Canaday's objections (Doc. 30) to the Report and Recommendation and **OVERRULES** those objections. Consistent with the magistrate judge's recommendation, Canaday's motion to suppress (Doc. 16) is **DENIED**.

**DONE** and **ORDERED** April 9, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE